Filed 11/9/23  In re Calia Q. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re CALIA Q. et al., Persons Coming Under the Juvenile Court Law. | B325760 (Los Angeles County Super. Ct. No. 22CCJP03918) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. LATRICIA Q., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Lisa Brackelmanns, Juvenile Court Referee.  Affirmed.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Latricia Q. (Mother) appeals from the juvenile court's jurisdiction findings and disposition orders declaring 16-year-old Calia Q., 12-year-old Monica C., six-year-old Marco C., and four-year-old Rene C. dependents of the court pursuant to Welfare and Institutions Code section 300, former subdivision (b)(1).[1]  Mother contends there is no substantial evidence to support the jurisdiction findings that her abuse of methamphetamine and marijuana placed the children at substantial risk of serious physical harm.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Referral and Investigation*

On August 31, 2022 the Los Angeles County Department of Children and Family Services (Department) received a referral stating Calia told the reporter that Marco C., Sr. (Father) locked

_____

[1]    The Legislature amended Welfare and Institutions Code section 300, effective January 1, 2023, in part by revising subdivision (b)(1) to specify in separate subparagraphs ways in which a child may come within the jurisdiction of the juvenile court due to the failure or inability of the child's parent or guardian to adequately supervise or care for the child.  Further statutory references are to the Welfare and Institutions Code.

2

Calia out of their home.[2]  When Calia asked Father to open the front door, he opened it and threw a glass bottle and plant at Calia, leaving a scratch on her chin.  A social worker and investigating police officer interviewed Calia and did not observe a scratch or other evidence that she had been hit by a bottle.  Calia later stated Father threw a glass bottle that shattered, and she "'thought it hit [her] face but it didn't.'"

Father told the social worker that he was sitting outside the house drinking a beer when Calia walked outside the home.  When Calia ignored Father's attempts to get her attention, he threw a glass bottle, which hit a small wall near his driveway.  Neither the bottle nor shattered glass hit Calia.  Father acknowledged it was inappropriate to throw the glass bottle.  Father was angry at Calia because she and her friend had taken his vehicle without permission earlier that month.  Calia also made four unauthorized purchases using Father's credit card information.  Father denied asking Calia to leave or locking her out of the home.  He consented to an on-demand drug and alcohol test, and he tested negative for all substances.

Mother reported Calia was at times disobedient and disrespectful, and she had stolen money and Father's car.  She also did not attend school regularly.  Mother was not at home when the incident occurred.  Father worked outside the home; Mother stayed home to care for the children.  Mother denied any drug use, although she admitted she had a history of prior substance abuse.  During Mother's pregnancy with Calia, Mother

---

[2]    Father is the biological father of Monica, Marco, and Rene.  Calia's biological father is Damero G., whose whereabouts were unknown.  Neither Father nor Damero is a party to this appeal.

tested positive for marijuana 15 times.  In addition, Calia tested positive for marijuana shortly after her birth in January 2005.  In June 2008 Mother was arrested for driving under the influence of alcohol (DUI) following an automobile accident in which no one was injured.  Mother also was arrested in 2010 and 2022 for driving under the influence of alcohol.[3]  Because of Mother's prior drug use, the social worker asked Mother to drug test.  Mother consented, and on September 12, 2022 she tested positive for amphetamine, methamphetamine, and marijuana.

On September 28, 2022 the social worker asked a school staff member about her interactions with Mother.  The staff member reported she had no concerns.  Mother was appropriate, and she did not appear to be under the influence of any drug when picking up the children from school.

B.    *The Dependency Petition and Detention Hearing*
On October 6, 2022 the Department filed a petition pursuant to section 300, former subdivision (b)(1).  The petition alleged Mother had a history of substance abuse including methamphetamine, and she abused amphetamine, methamphetamine, and marijuana, which rendered her incapable of providing regular care and supervision of the children.  Further, Marco and Rene were of such a young age as

---

[3]    Mother's criminal history includes the 2022 DUI arrest, as Mother acknowledges in her opening brief.  But Mother denied in an interview with the dependency investigator that she had the recent arrest for a DUI.  Father reported Mother dealt with an outstanding warrant in 2022, which caused the DUI arrest to appear on her criminal record for that year.

4

to require constant care and supervision. Father knew or reasonably should have known of Mother's substance abuse, and he failed to protect the children by allowing Mother to reside in the home and have unlimited access to the children.

At the October 7, 2022 detention hearing, the juvenile court detained the children from Mother and placed them in Father's home. The court granted Mother monitored visitation for a minimum of nine hours per week with Father allowed to monitor the visits.

C.    *The Jurisdiction and Disposition Report*

According to the November 17, 2022 jurisdiction and disposition report, Mother entered a residential treatment program on October 3, 2022. Mother told the dependency investigator that she had been sober for 18 days, and she did not think she continued to have a drug problem. Further, Mother had four negative drug tests from October 20 to November 9, 2022.

Mother reported she started using methamphetamine when she was 16 years old, and she had "'been using off and on for 23 years.'" Mother stated, "'I've been sober when I'm pregnant. Then I started using after giving birth. I always look forward to giving birth so I can use again. But I wait a bit and then I started using maybe within 2 weeks of giving birth.'" Mother added, "'I tried to use it as much as I could. I still sleep 5-6 hours. The pregnancies and babies are sort of what make me use. . . . I have to keep the house up, take the children to school, cook, pick them up, feed, and help with homework because I didn't work. . . . It was hard for me to get out of bed without using. I had to have a lot to stay energized.'" Mother also stated,

5

"'I use marijuana every day. It keeps me calm when I catch an attitude. I started smoking marijuana when I was 14.'" Mother stored the drugs in her car, and she did not use drugs around the children. Mother reported Father did not know of her methamphetamine use.

Father told the dependency investigator that he "'was shocked'" when he saw Mother's positive test results for amphetamine and methamphetamine. Father stated, "'I've known mom for about 16 years, since Calia was a baby. Since I've known her, she's always been a night owl. I never had any idea that she was using or I would have found out when she going to prenatal care.'" Father added, "'I know what people look like that use, but she didn't look like that. . . . I would see her smoke marijuana. She would smoke outside. I would watch the kids, if she was under the influence. She would use it to relax.'"

The dependency investigator also interviewed the children and two maternal relatives. Calia refused to talk to the dependency investigator. Monica said, "'My mom didn't always cook. Sometimes she wouldn't get out of bed. I asked for food and she told me how to make it. . . . Sometimes she was in bed all day. My mom would lay down. [Calia], me, or my dad would cook. My mom would be up at night and would clean sometimes. Sometimes she would sleep all day and night.'" Six-year-old Marco stated Mother "'would lay down, sometimes she said she was sick. She wouldn't get out of bed. My dad would help us take a shower. Monica would help." Marco added, "'My mom sometimes made eggs. But sometimes Calia or Monica or my dad made food.'" Four-year-old Rene was unable to provide any meaningful statement because of her limited verbal ability. The maternal grandmother, Monique M., was not aware of Mother's

drug use, and she had no concerns regarding Mother's care of the children. Likewise, maternal aunt Shanida J. did not have any concerns regarding Mother's care of the children.

D.    *The Jurisdiction and Disposition Hearing*

At the November 30, 2022 jurisdiction and disposition hearing, Mother submitted a November 29 progress report from her counselor at the residential treatment program stating Mother was enrolled in a 90-day residential treatment program and had been in the program for 59 days. Mother "remained compliant with . . . program requirements to date and has obtained a sponsor." Mother "continue[d] to attend 4 groups per day 5 days per week totaling a minimum of 20 hours of group counseling weekly." Mother submitted to weekly random drug testing and tested negative for drugs. Mother also was attending a 10-week parenting class.

Following arguments from the attorneys, the juvenile court sustained the allegations against Mother under section 300, former subdivision (b)(1), and dismissed the allegation that Father failed to protect the children. The court declared the children dependents of the court, removed them from Mother's physical custody, and released them to Father. The court ordered Mother to participate in a drug and alcohol program with aftercare, random or on-demand weekly drug testing, a 12-step program with court card and sponsor, and individual counseling to address any case issues, including substance abuse, "effective communication with Calia," and parenting. The court granted Mother monitored visits for a minimum of at least nine hours per

week with the Department having discretion to liberalize visitation.

Mother timely appealed.[4]

## DISCUSSION

A.    *Governing Law and Standard of Review*

The juvenile court may assume jurisdiction over a child when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of the child's parent or guardian to adequately supervise or protect the child." (§ 300, former subd. (b)(1).)  "A jurisdiction finding under section 300, subdivision (b)(1), requires the Department to prove three elements: (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of

---

[4]    In her appellant's opening brief, Mother challenged the jurisdiction findings and the disposition orders removing the children from her physical custody and ordering monitored visitation.  On June 27, 2023 the Department filed a motion for judicial notice of postjudgment evidence and a motion for partial dismissal of Mother's appeal as moot.  The Department argued Mother's appeal was partially moot because the juvenile court returned the children to Mother's custody at the May 31, 2023 six-month review hearing.  (§ 366.21, subd. (e).)  We granted the Department's motions, partially dismissing Mother's appeal as moot because Mother's challenges to the November 30, 2022 disposition orders "have been superseded by subsequent orders from the juvenile court dated May 31, 2023."

serious physical harm or illness." (*In re Cole L.* (2021) 70 Cal.App.5th 591, 601 (*Cole. L.*); accord, *In re S.F.* (2023) 91 Cal.App.5th 696, 712; see *In re R.T.* (2017) 3 Cal.5th 622, 624 ["section 300(b)(1) authorizes dependency jurisdiction without a finding that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child"].)

"Although section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing [citations], the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child." (*Cole L.*, *supra*, 70 Cal.App.5th at pp. 601-602; accord, *In re L.O.* (2021) 67 Cal.App.5th 227, 238 ["'Although there must be a present risk of harm to the minor, the juvenile court may consider past events to determine whether the child is presently in need of juvenile court protection.'"].) "A parent's "'[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.'" (*Cole L.*, at p. 602; accord, *In re S.F., supra*, 91 Cal.App.5th at pp. 712-713.)

We review the juvenile court's jurisdiction findings for substantial evidence in light of the whole record. (*In re I.C.* (2018) 4 Cal.5th 869, 892; *In re R.T., supra*, 3 Cal.5th at p. 633.) Substantial evidence is "evidence which is reasonable, credible, and of solid value." (*In re I.C.,* at p. 892; accord, *Cole L., supra,* 70 Cal.App.5th at p. 602.) "'[W]e draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.'" (*In re R.T.*, at p. 633; accord, *In re I.J.* (2013) 56 Cal.4th 766, 773; *Cole L.*, at p. 602 ["while substantial evidence may consist of

9

inferences, any inferences must rest on the evidence; inferences based on speculation or conjecture cannot support a finding"].) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or orders." (*In re E.E.* (2020) 49 Cal.App.5th 195, 206; accord, *In re D.B.* (2018) 26 Cal.App.5th 320, 328-329.)

B.    *Substantial Evidence Supports the Jurisdiction Findings Under Section 300, Former Subdivision (b)(1)*

Mother contends there was no evidence her drug use resulted in neglectful conduct, arguing she took care of the children; the school and her family members did not have any concerns about her care of the children; and Father and the children were not aware of Mother's methamphetamine use. Mother also asserts there was no substantial risk of harm to the children because at the time of the November 30, 2022 hearing, she was 60 days into a 90-day drug treatment program, was participating in 20 hours of counseling each week, tested negative for drugs in weekly random drug tests, had a relapse plan, and visited with the children. Further, Mother was cooperative and motivated to ensure the children could remain home in Father's care.

Substantial evidence supports the juvenile court's jurisdiction findings that Mother's history of substance abuse and continued use of amphetamine, methamphetamine, and marijuana rendered her incapable of providing regular care and supervision of the children. Mother reported she started using marijuana when she was 14 years old and methamphetamine when she was 16. Mother tested positive for marijuana 15 times while pregnant with Calia, and Calia tested positive for

10

marijuana shortly after birth. Mother admitted she had been using methamphetamine "'off and on for 23 years.'" Mother said she was sober when she was pregnant, but she "'always look[ed] forward to giving birth so [she] can use again.'" Mother added, "'I tried to use it as much as I could. . . . It was hard for me to get out of bed without using. I had to have a lot to stay energized.'" Mother also admitted to daily use of marijuana, and then tested positive for methamphetamine, amphetamine, and marijuana on September 12, 2022. Notwithstanding this long, unresolved history of substance abuse and multiple relapses, Mother believed after 18 days of sobriety in the residential drug treatment program that she no longer had a substance abuse problem.

Mother contends substance abuse, without more, is an insufficient ground to assert dependency jurisdiction. (*In re L.W.* (2019) 32 Cal.App.5th 840, 849 (*L.W.*) ["[O]ur case law stands for the proposition that drug use or substance abuse, without more, is an insufficient ground to assert jurisdiction in dependency proceedings under section 300."]; *In re Rebecca C.* (2014) 228 Cal.App.4th 720, 727-728 [mother's abuse of methamphetamine, amphetamine, and marijuana alone did not support jurisdiction finding]; *In re Drake M.* (2012) 211 Cal.App.4th 754, 769 [jurisdiction finding based on medical marijuana usage "*alone* without *any* evidence that such usage has caused serious physical harm or illness or places a child at substantial risk of incurring serious physical harm or illness" must be reversed], disapproved on other grounds in *In re D.P.*

11

(2023) 14 Cal.5th 266, 282-283.)[5]  But unlike *Rebecca C.* and *Drake M.*, here the juvenile court did not assume jurisdiction over the children because of Mother's substance abuse alone.

*L.W.* is on point.  There, the mother challenged the jurisdiction findings that her abuse of cocaine and alcohol placed her child at substantial risk of physical harm.  (*L.W., supra*, 32 Cal.App.5th at pp. 845, 848.)  The Court of Appeal noted, "It is undisputed there was no evidence of and no specific finding of past harm to L.W. as result of Mother's substance abuse.  L.W. stated she never saw any drugs or paraphernalia at home, never saw Mother abuse drugs and felt safe living with her Mother.  She was well fed, groomed, and regularly attended school.  All percipient witnesses and family members agreed Mother was a good parent to L.W. and all denied having concerns about Mother's abilities as a mother."  Nevertheless, the court found jurisdiction was warranted because a year prior to the referral, Mother was arrested twice for driving under the influence of alcohol and was convicted of reckless driving for the more recent

---

[5]     Mother also relies on *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, but that case does not involve a challenge to the jurisdiction findings.  In *Jennifer A.*, the court held there was no substantial evidence to support the finding at the section 366.22 hearing that returning the children to the mother's physical custody would be detrimental to them.  (*Id.* at p. 1326.)  The court found the mother was in substantial compliance with her reunification plan notwithstanding her two positive tests for alcohol and marijuana and nine missed drug tests, and there was no "testimony linking Mother's marijuana and alcohol use to her parenting judgment or skills."  (*Id.* at p. 1346.)

arrest. (*Id.* at p. 850.) The court explained, "That there were two arrests and at least one conviction within a year of the referral shows Mother's substance abuse is now spilling over into areas that will pose a substantial risk of physical harm to L.W." (*Ibid.*)

Similar to the mother in *L.W.*, Mother denies her substance abuse affected her ability to supervise and care for the children. Mother relies on statements by Monica and Marco in their September 1, 2022 interviews for the detention report in which they said Mother cooked food for the children, took care of them, watched them when they were home, and took them to doctors' appointments. Monica and Marco also denied seeing Mother smoke or Mother being "unable to wake up" or "acting weird." However, in their subsequent statements to the dependency investigator on October 20, Monica and Marco indicated Mother was unable to provide regular care for the children. Monica reported Mother sometimes "was in bed all day" and at times "'would sleep all day and night.'" Marco likewise reported that Mother would say she was sick and not get out of bed all day. Marco added that Father and Monica would help him take a shower when Mother was in bed. Monica and Marco also stated that Father, Calia, or Monica would cook when Mother did not.

We commend Mother for her participation in a substance abuse program starting in October 2022. But given her history of stopping her methamphetamine use and then relapsing, at the time of the jurisdiction and disposition hearing the children were at substantial risk of physical harm if Mother again relapsed. Further, six-year-old Marco and four-year-old Rene were especially in need of parental care and supervision given their

young ages.[6] Mother's minimization of her neglectful conduct and failure to acknowledge she had a substance abuse problem support the juvenile court's finding Mother's substance abuse created a substantial risk of harm to the children. (*In re A.F.* (2016) 3 Cal.App.5th 283, 293 ["In light of mother's failure to recognize the risks to which she was exposing the minor, there was no reason to believe the conditions would not persist should the minor remain in her home."]; *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."]; *In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044 ["[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision."].)

---

[6] In *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219, we applied the presumption that for children six years old or younger, "'the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of harm.'" (Accord, *In re K.B.* (2021) 59 Cal.App.5th 593, 603 ["When a child is of tender age, a parent's substance abuse can be prima facie evidence of a risk of serious physical harm or illness."]; *In re Drake M., supra,* 211 Cal.App.4th at p. 767.) Because the validity of the tender years' presumption is before the Supreme Court in *In re N.R.* (April 29, 2022, B312001) [nonpub. opn.], review granted August 24, 2022, S274943, we do not rely on the presumption to find jurisdiction appropriate here.

## DISPOSITION

The juvenile court's jurisdiction findings are affirmed.

FEUER, J.

We concur:


SEGAL, Acting P. J.


MARTINEZ, J.